I have the pleasure of moving the admission of my four law clerks, and I guess Judge Prost should preside for purposes of this motion. I move the admissions of Brittany Blewett Amati, who is a member of the Bar of Good Standing of the Highest Court of Virginia, and Nathan Robert Curtis, who is a member of the Bar of Good Standing of the Highest Court of Texas, and Lisa L. Loulette, who is a member of the Bar of Good Standing of the Highest Court of New York, and Brett Jason Thompson, who is a member of the Bar of Good Standing of the Highest Court of Texas. I have knowledge of their qualifications and am satisfied they possess them in extraordinary measure. And this is an occasion to thank the four of them for their really outstanding work this year, and it's been a pleasure to have all of you as my law clerks as we come to the end of the court term. You'll go on and have success in other areas, but you will be missed. You've done a wonderful job, and I'm very grateful. The motion is granted with enthusiasm. All right, you may stand and take the oath. Please raise your right hand. Do you solemnly swear or affirm that you will support yourself as an attorney and counsel of this court, uprightly and according to law, and that you will support the Constitution and the United States of America? I do. I do. Good morning, and may it please the court. I apologize for my voice. I've had a bad cold. I probably caught it in China. There are two issues in the case. One deals with, on the main appeal, one deals with whether there's substantial evidence supporting the finding of infringement of the method claims, and the second one is whether the system claims are indefinite as a matter of law. I'd like to deal with the second question first, the indefiniteness issue. At the heart of that issue is whether or not there is an algorithm disclosed in the patents in suit. I submit there is none. E-Plus, in its brief, lists a huge collection of sites to the patent. I ask the court to look closely at those sites, to read the language, and I submit what the court should find is that there is no step-by-step analysis, which they claim there is, between the beginning and end steps. In the means for processing, they only describe a starting point, which is the requisition. They describe an end point, which is one of our purchase orders, but they don't connect the two. They don't tell you how you get from the first step to the second. Let me direct your attention. I think I understand what you're saying, but I think they point most vigorously to Column 15 of the patent. Column 15? Yes. I think that's the best on the 683. Okay. It's the strongest argument they have, frankly, for what there is to the sufficiency of the disclosure. So I guess my question to you is directed more to that, and as to what specifically is missing from this disclosure. My answer to that, Your Honor, is that as to the means for processing, that column only describes a process for creating the requisition, which is a starting point, and the issue is whether or not there is an algorithm showing how you get from the starting point to the end point, and this is a good example of why they don't satisfy that. As to the means for converting, the patents only describe a database with data cross-referencing from a product to catalog numbers of different vendors, but the patent doesn't tell you, doesn't provide an algorithm or a step-by-step process for how the data is used to convert one item to the other. On the means for converting, I must say that I, on that issue at least, I think there's a waiver problem, is there not? I mean, I didn't see anything that was pointed to. I think the best you've got, am I wrong, is a footnote in which you say there are other limitations that are problematic, but that you never really point out this particular limitation, right? Your Honor, I submit there's no waiver problem here, with due deference to your point. It's a summary judgment motion. In the summary judgment motion, we not only described the means for processing, but we described, we included in that motion the other means elements of the claims. But you don't treat a converting step in a footnote, right? We mentioned that in the footnote. But we also, Your Honor, in the pre-briefing, in the pre-verdict briefing, the 50A briefing of E-Plus, it mentioned both issues, the issues as to the means for processing and the means for converting, showing that they recognized that we did. But it wasn't in your briefing. No, but it shows that they recognized that that was an issue, and the only place where we raised it was in our summary judgment motion, and the judge made it clear that he accepted the fact that there didn't have to be any JMO arguments, even though we raised them in JMO arguments, and he said there has been a summary judgment motion, and Lawson is relying on the summary judgment motion. It was mentioned all through the cases, and there is a decision of this court making it clear that if the court and the other side is aware of the issues that are being raised, it was a decision by you, Judge Dyke, in a case I argued, and for the life of me I can't remember it. It involved a hair dryer. It said if the court and the other side is alerted to the issues that there is no waiver, and I submit that though... I think that case says if the court decides the issue, not alerted to the issue. If the court actually decides the issue, even if it wasn't preserved, but if the court goes ahead and resolves the issue and doesn't rely on waiver. But that's the lower court has to decide the issue. Your Honor, that is not my recollection of that case. In any event, I agree. In the summary judgment motion, we mention the second means clause in a footnote, but it mentions it clearly and crisply, and it mentions that there is an indefinite issue as to that clause, and I would suggest that merely because it's in a footnote does not mean there is a waiver, particularly whereas here E-Plus recognized that both issues were in play in its 58 papers, and it's clear from the post-50B motions that that issue was in play. Do we need to, I mean, you don't need to prevail on both of those, right? Both of those limitations are in the claims, so if we were to hypothetically agree with you with respect to the purchase order limitation, you don't need to... The answer is, Your Honor, that if we prevail on the means for processing, we don't need to prevail on the means for converting, and the means for converting was the one in the footnote. So that is true, Your Honor. Can you turn to the joint infringement, not to the infringement issue now, because I've got some confusion, I'm a little bit confused about... Yes, Your Honor. I know there's a question about whether or not joint infringement was an issue at all, but leaving that aside for a moment, I'm unclear on how it comes into play with respect to the various claims, and one piece of that is let's... If we assume that the punch-out involves third-party vendors, what limitations are not satisfied by the customers? Does that make sense? Or maybe I should put it another way. Let's assume that we disagree with you, and we think that the customers are performing the step of determining whether an item is available. Right. Is there still a question with respect to the vendor's participation, with respect to what the briefs call the punch-out thing, or do you just lose? I mean, if we go the other way, if we agree with the district court judgment... The joint infringement question involves two issues, determining inventory and converting data. The determining... I think the question is if we were to conclude that the customers are performing the determining step, we don't have to get to any of the joint infringement issues. The joint infringement is an alternative argument if we conclude that the customers are not performing the determining step. If the customers are performing all the steps, then you don't need to get to the... Well, you do need to get to the steps, because then the question is whether loss had induced them to infringe. But that's a direct infringement. But just in terms of whether there's direct infringement here. If the customers are performing the determining step, we don't have to worry about joint infringement. That's exactly right. But your argument is that the customers are not performing the determining step. Exactly. And that they, in fact, concede that the punch-out process or software doesn't involve performing the determining step by the customers. Exactly. And that this EMI or whatever the alternative is... EDI. EDI doesn't involve the customers. Also, could you address those issues for a moment? The question... Okay. Address them on the merits. Yeah. Okay. The determining step is actually determining inventory. And it is clear, we submit, that the vendors determine the inventory. In the EDI system, E-Plus does not contend that the customers determine the inventory. They contend that... Why didn't you ask for a construction of determining the inventory? Did we ask for instructions on that? Why didn't you ask for a construction of that term? There was no construction of determining the inventory. Your Honor, I'll be frank with you. I don't remember whether there was an instruction or not on that issue. That issue was not briefed, and I do not know the answer to that question. I'm talking about a claim construction, not a jury instruction. A claim construction. That's what I'm responding to. We decided to ask for a jury for a claim construction of a determining... I accept that. I don't know the answer. Well, let me just... If a customer who asks the vendor whether an item is available, why can't that customer also be said to be determining if an item is available? Because the customer... The vendor is the only one who knows whether or not there is inventory. And while the customer can make an inquiry, it cannot determine that, in fact, there is inventory there or not there. It requires the vendor to participate and to tell the customer that there is inventory or not inventory. But Column 14 of the patent, of the 683, describes the concept of determining. And as it describes this concept, it talks about various ways in which the customer makes the determination, including reaching out to a third party to get information from them. But it's the customer that is making the determination under the 683. Your Honor, I submit that the customer is making the inquiry, but the determination cannot be made without the vendor's input. And that is why we say it's a joint infringement problem. We also point out that there's no converting step at all. The converting step is supported, according to Weplus, only by capability. And capability is not a measuring point for infringement of a method claim. Mere capability of doing something is not enough to satisfy infringement. But in that case, I understand that. We're not talking about a system, but in that case, what you're saying is that their argument is that there's not only capability, but in fact it is a central part of the system, and that all of the training, all of the things that Lawson taught his customers to do included that. Capability is an optional measure, Your Honor. And on capability, it requires the use of a certain code, and all of the testimony is that that was not used. The only testimony on whether the capability function was used was negative testimony. It was not positive testimony. It was testimony in favor of Lawson rather than Weplus. It's clear that Lawson used that capability, though. Pardon me, Your Honor? Lawson did use that capability. Does it not when it does its training, when it does its testing? Your Honor, as far as Lawson's direct infringement, which that issue goes to, I submit that the evidence is all that it was not used. Now, there's no evidence that it was used by anybody. And their only argument is that there's a capability of using. Are you suggesting my time is up? Well, you're into your rebuttal time. Do you want to reserve it? I need to reserve it. Mr. Robinson? Good morning, Your Honor. Good morning. Why don't you address this question of whether you're alleging that the Clem 26 is infringed by the use of punch-out? Because as I read your brief of 39 and 40, you seem to be saying that there's no allegation that the use of punch-out performs the determining effect. I don't think that's quite accurate, Your Honor. I think there is a query that can be made to the punch-out site, whatever the particular website is, and they can report back to the Lawson user using the Lawson system whether or not that particular vendor has the product available. But who initiates that query is the user using the Lawson system, and who receives that result is the user using the Lawson system. So are you contending that the user of the Lawson system, then, is performing the determining step? Yes. I mean, clearly the vendor is providing the information as to whether or not the desired item is in inventory. Clearly that comes from the vendor. But it is the user that has made the request, and it is the user using the system that receives it, and then the user has determined whether the product is available in inventory. Then why do you say at the bottom of page 39 of the red briefs that this contention relies on the incorrect premise that these claims are infringed by the use of punch-out? Well, I think what we're saying is that it can be infringed with respect to the configuration 5, I see Your Honor's point, which includes the EDI component. And there was a system with punch-out as well as with EDI. And with EDI, that's a communication protocol for the user to ask a vendor in particular whether or not they have the item, desired item, in inventory. So if I understand you correctly, you're saying the determining step is not being performed by the use of punch-out, but by the EDI. Yes, Your Honor. Okay, so then how does the use of EDI involve performing the determining step? Well, again, by using EDI, you initiate the request from the Lawson system. That communication protocol issues a purchase order response, and what you'll get the information back from the vendor to say, well, the item is out of stock or needs to be back-ordered or something like that. So the user using the system has made the query because it desires to determine if the item is in inventory and has received back the information. And based on that, the user has determined whether the item was in inventory. So asking the vendor to make the determination involves performing the determining step. I think the vendor simply provides the information so that the user can determine whether it's available. But the vendor under the EMI or EDI protocol is the one that says it is in inventory or it is not in inventory, right? It provides that information, yes. And is it correct that no question of joint infringement was presented to the court? The court did not instruct the jury on a joint infringement theory. There was evidence elicited on a joint infringement basis. Whether the court could find joint infringement without the instruction is unclear. It certainly wasn't waived, and the court never suggested it was waived. The court just determined that infringement could be established by a single actor. I think the stuff we have at least in the appendix is rather cryptic, but I thought the court was saying it understood that joint infringement wasn't in play in this case, which suggests that you weren't preserving it or raising it. Well, Your Honor, I would respectfully suggest that that's not with the record support. I think we quoted in our red brief where I indicated that this case in some instances could be a poster child for joint infringement. However, I said whether it's joint infringement or if it's simply a single actor performing the steps, we win either way. But you didn't object to the fact that you have a joint infringement instruction, so under Rule 51 you can't complain that there wasn't an instruction. I don't believe that's accurate either, Judge, because what the judge indicated was we submitted our instructions. We did submit a joint infringement instruction. The court indicated that to the extent he didn't accept any of our instructions, those objections were preserved on the record. So the court indicated that— When did he say that? I think it was during the jury instruction conference that we had. But I thought that what the judge said was his understanding was that it had been given up. I think the judge— That's different than saying it's been preserved, right? I think the judge came to that conclusion, and I think that was an erroneous conclusion because I didn't say I gave it up. He said I gave it up and then said sit down, and I typically follow an Article III judge's instructions to do that when so instructed. But at no time did I say that we were giving up a joint instruction theory. No, but the question is whether you had to object to the fact that you gave the instruction, and I had understood you a moment ago would be saying that the judge's comment excused you from making the required objection. Yeah, I think that would have been unnecessary after the court indicated that, you know, our rights were preserved by the submission of the instruction, and there's no question he submitted a joint infringement instruction. You can't tell us the page here so we can look at what he said? I can't tell you off the top of my head, but I will go back and find that site. I'm not even sure. But he did say in the charge conference that everybody's objections were preserved and they didn't need to be restated at the time of the instruction. That is my memory judgment, Alex, but I will go back and confirm that. I mean, as I stand here right now, that is my memory, but, you know, because otherwise I'm sure we would have lodged objections. If I could address just briefly the waiver issue, because I think, Judge Proust, you're exactly right. I happen to have the footnote here from somebody. Are we talking about the systems claim? Are we moving on to the systems claim from the indefinite now? Well, we can do that. I wanted to just say that we were agree with you on the converting means. Yeah, but that's what I'm talking about. That waiver issue is implicated in the question of indefinite, right? Yes. Okay. So the footnote here is not specific at all as to any particular means plus function element. It simply just says that the other means elements in Claims 3 and 6 are indefinite, and I'm just obviously paraphrasing. But you don't dispute that they raised the means for processing? No, I don't dispute in their summary judgment they raised that issue. But your position remains that they raised that as well, by not raising it with the jury and the JMA and that. My position is certainly that they said it's a triable issue in the amended complaint. There's no dispute. They put no evidence on with respect to indefiniteness at the trial. It's a question of law, is it not? Well, the case law suggests it's a question of law based on underlying facts and typically would have a person of ordinary skill in the art testify as to whether the claims are not indefinite or not based on the specification. That wasn't offered nor was it argued in the Rule 50A motion. The only time that the judge said you don't have to argue the things that were in the summary judgment motion, right? I think that is actually not a correct statement of the law. I think once they indicated that it was to be a triable issue, then put no evidence on and then did not pursue it. If they didn't put any evidence on and the evidence was required, that's another question. Then maybe you win on that. But as far as raising the legal issue, having raised it in the summary judgment motion and the judge says you don't need to raise that in the JMA because you preserved it, that's sufficient to preserve it, right? I think there is a case we cited in our brief that indicates just raising it in summary judgment and not then offering evidence does not preserve the issue. Well, it may not just raise it in the summary judgment, but if it's raised in connection with the JMA and the judge says you don't have to argue that further because you're relying on your summary judgment motion, why isn't that sufficient to preserve it? Well, I think you'd still need to preserve it by raising it under Rule 50A and then you could renew it under Rule 50B, but you can't renew it if it hasn't been raised. Simply by the court saying you raised it in your summary judgment motion. But if I could move on to this issue about whether or not there is evidence of a single actor. Well, let's stay on, why don't we stay on the indefiniteness for a moment and the system's claims. And I'm correct, am I not, that your main, provision you point to is the fact that language in column 15. Do you want to tell us why that's a sufficient disclosure? Certainly. Just briefly, you're obviously seeing my time has expired. There's figure three, which is a flow chart, which refers to element 114, which is the purchase order module, and Lawson contends that all that is is a blank box. What they fail to point out in figure three is there are also a number of numbers after the purchase order, and the numbers are described, and the purpose of those numbers are described at the bottom of column 10, in which what they indicate is that they are assigning codes to various vendors or suppliers for information in order to be able to split the requisition and then process the purchase order. What you're referring to, column 10, lines 44 to the end of the paragraph, it concludes by saying a purchase order then would be generated for this corresponding item as further described below. Where does that give you structure? And then, I think you cited the important part of the specification on column 15, which indicates that once the requisition has been inventory sourced, you have these various codes, and in fact it refers back to step 114 in figure three, and the various codes permit you to then direct and route the orders to whoever is going to be sourcing it. It could be internal fissure, in which case figure three shows that it's routed back to the host computer for processing. If it's a code 05, which is a third-party vendor, you'll see that it is directed to a printer so it can be faxed, it can be mailed, or indeed column 15 goes on to describe, or that EDI can be used in order to deliver the purchase order to that third-party vendor. And in that way, I think that shows how the requisition, a single requisition, is split into multiple purchase orders and routed for processing. Yeah, it describes the function. It doesn't describe, it doesn't disclose the structure. Well, I think the structure is when you, in a computer-implemented system, when you use coding, the coding permits you to separate those out and process them in a different fashion, including when you're using a third-party vendor. That, I think, shows sufficient structure that would perform that function. And, of course, it goes to a person of ordinary skill in the art, and when you're using this coding mechanism, a simple program can be generated to utilize those codes in order to separate separate lines from the requisition, which is a program which is not described in the specification. Well, I think the program is described to the extent it says, we're going to assign coding, and then the codes can be used to break up the separate line items in the requisition and process them to the appropriate source. Yeah, but it doesn't tell you how to do it. Well, it tells you to use the codes to recognize that they are different vendors that need to get the different line items from the requisition. I think that is the steps to achieve the result, and that's what cases like Typhoon Touch and Finisar and others say would be sufficient. You've divided this up, but Mr. Strapp is going to argue the cross-appeal. Mr. Strapp, yes, is going to address the cross-appeal and the damages issues. Thank you. May it please the Court. The District Court's exclusion of E-Plus' damages expert, Dr. Mangum, was improper because Dr. Mangum's qualifications were unchallenged. He used a hypothetical negotiation, and he used the Georgia-Pacific factors to estimate a reasonable royalty. That's a methodology this Court has consistently upheld. We receive for abusive discretion? Yes, it's an abusive discretion standard. Dr. Mangum analyzed all of the license agreements to the patents in suit, considered similarities and differences between those agreements, and the hypothetical negotiation ultimately concluded that a royalty rate should be in the range of 5% to 6%. When the District Court excluded Dr. Mangum because it disagreed with his conclusions, it ignored the warning in Daubert that the focus of a Rule 702 inquiry must be solely on principles and methodology, not on conclusions to generate. But if we're talking about an economic theory, for instance, what if you had an economist who did not consider a whole variety of variables? Would a court be required to allow that testimony to come in if he just said, well, there's all these variables out there, but I don't think they matter, so I'm not going to even weigh them? Well, as Judge Prost said in the I4I case, and that was a case about exclusion, whether or not a damages expert should be excluded, even if there are additional facts that a damages expert could have considered, so long as the expert considered sufficient facts and data such that the opinion was relevant and reliable, it should be admitted. It should not be excluded. Here we submit that Dr. Mangum considered the most reliable evidence in the record. License agreements to the patents in suit. There was no question about whether that technology was comparable. Then went on, analyzed each of the Georgia-specific factors and determined what an appropriate royalty rate was. Now, the district court, in excluding that opinion from coming forward, was essentially usurping the role of the jury, which this court warned should not do in the I4I. But the court did say that it was his methodology that he was disagreeing with, didn't it? Well, each of the criticisms that the court had of Dr. Mangum, that he relied on certain settlement agreements, that he did not project the royalty base for those agreements in a way that he agreed with. Those were criticisms that go to the weight, not to the admissibility of the expert's opinion. And first, excluding it under Daubert, under I4I, we submit that that was error. In I4I, Mr. Dunick probably recalls this better than I, but we were affirming the district court's judgment in I4I. That's correct, Your Honor. If I might turn to the ruling that followed. Why didn't you just give a number? The judge was begging you for a number in that second hearing. Your Honor, the second hearing followed almost immediately after the exclusion of Dr. Mangum. And at that point, we were considering all the evidence that was in the record that had not been excluded under the ruling excluding our expert. And we determined that that evidence would be sufficient to support an award. And we intended to present that evidence to the jury. This was timely disclosed evidence, so a discovery sanction was inappropriate. I don't understand that. The interrogatory asked for your calculations. You didn't supply them, apart from the expert. And so why couldn't the district court say, well, you didn't answer the interrogatory and supply these other calculations. They can't do it now at trial. What's wrong with that? Your Honor, that ruling was contrary to your holding in the Dow Chemical v. Me Industries case. In that case, an expert was excluded on the eve of trial, during a bench trial. Yeah, but it wasn't a discovery sanction issue in the Dow. But it was essentially the same thing, because what the district court judge said in Dow Chemical was, since the only evidence you have disclosed is set forth in the four corners of your expert report, I find that you don't have a sufficient— Yeah, but there was no interrogatory request for the other evidence in Dow, right? Your Honor, we submitted— Yes, there was no interrogatory involved in Dow. There was no interrogatory that was at issue there. But Rule 26 still applied, which is what the court was focusing on here. Right. But, Your Honor, under Rule 26 and Rule 37, you look at the totality of the evidence to see what was otherwise disclosed, whether it was in the form of an interrogatory response or otherwise. And here, we submitted substantial evidence in the form of responses to other interrogatories, in deposition testimony, in expert reports. All of that information had been timely disclosed to lawsuit. It was not set forth in an interrogatory—in a specific interrogatory response, but it was set forth and disclosed to lawsuit—timely disclosed to lawsuit. That was the evidence that he submitted in his offer of proof. You submitted evidence, but what the judge was asking for was an alternative computation, as required by Rule 26. So why didn't you just say, we're going to rely on the same—we're going to ask for the same number, but we're going to use lay evidence to try to get there, or we're going to ask for 2 percent, 4 percent. Why didn't you just come up with a range? Your Honor, that's exactly what we did in the offer of proof that was submitted. But that was after trial. That was during trial, at the outset of trial. It was submitted January 11th, I believe. Trial was ongoing at that point. Now, the reason we didn't put that offer of proof together at the time that this motion was presented to preclude damages altogether was because, as I said, it followed immediately upon the exclusion of Dr. Mangum. Candidly, we didn't have time to marshal all of that evidence and put it in an offer of proof. You mean like the same day? It was the same week. It was the same week. It was a couple days later, though, right? Correct. That's what I thought. Correct, Your Honor. But the point that I would like to make is that— I think we're out of time. Thank you. We'll give you a minute for rebuttal. Mr. Dunner, we'll give you four minutes because your opponents have had extra time. Your Honor, let me deal just briefly with the last point that Ms. Strapp has made dealing with the Mangum exclusion and the damages issue. Judge Lentz set forth a detailed exposition of why the methodology was inadequate. They used the two most expensive settlement agreements and they dropped the three least expensive settlement agreements. They argued that it was—they dropped them because of an avoidance of litigation issue. Judge Lentz pointed out there's avoidance of litigation issues involved as well. You mean Judge Payne? Pardon? Judge Payne. Judge Payne. But isn't that really a disagreement, though, with his conclusion? Because he explained why he was discounting those. Whether you agree with him or not doesn't mean that his methodology was wrong. He said he had a rational explanation for why he thought those were different. Your Honor, I think it was methodology. There was a whole listing of issues, one of which was they went through the Georgia-Pacific factors and said it's higher or lower, and didn't explain at all why that increased by 100% the lower range. So when you go through Georgia-Pacific factors, you've got to put a numerical number on each one? No, he said you didn't have to do that. He expressly said he wasn't looking for that provision, but he was looking for some explanation as to why it would increase the lower range 100%, the damages from $10 million to $20 million. There was no explanation. As he put it, it's a dixit, and I think he was exactly right. He had a whole host of reasons. It was not only the fact that they excluded the three lower ones and used the two higher ones. There was no adequate explanation for why they did that. He talked about the fact that they projected… When you go through all the lists of things that he said that were wrong, it does read like a killer cross-examination. I give you that. But isn't that really what it is, a cross-examination, rather than a basis to exclude? Are you talking about Judge Payne's comments? Yes. I think not, Your Honor. He was explaining, and there is case law for the proposition, that if you just basically use Georgia-Pacific sort of in the abstract and then say one's higher, one's lower, and then come to a conclusion, he mentioned the eye-for-eye case. I agree with that case. I argued that case. And the fact is that the increase there was only two percent, only, I think, two million dollars, not double. It was only a two percent increase, not a hundred percent increase. Not to mention the fact that the issue here was not involved in eye-for-eye. I think Judge Payne went through a whole host of issues which correctly induced him to find the methodology was bad, he acted as a gatekeeper, following Daubert, following Kumho, and I think he did exactly the right thing. On the question, you asked exactly the right questions on the exclusion of damages. He asked them over and over again, just give me the computation required by Rule 26. They said they didn't give it to him. He asked them over and over, just give me a computation. They didn't give it to him. They had an offer of proof, it came too late. There are a lot of cases that we have, though, that say that the Georgia-specific factors are not really amenable to precise mathematical calculations, and that really, how can you actually compute a precise number versus a range that you might be asking the jury for? Your Honor, I submit there's got to be limits to that. If you use Georgia-specific factors and say some are higher, some are lower, and suddenly you double the range, at the lower end of the range you doubled it, the dollar amount was doubled, there needs to be some explanation of how you arrived at that doubling. They had no explanation. They used information from the SAP and the ARIVA agreements, and they extrapolated over a decade period, and the judge said you didn't explain why you maintained the level of sales during that entire ten-year period. There are a whole host of reasons that were used and that were not explained. I say this goes to methodology and not to conclusion. Mr. Jenner, your time is almost up. Let me just direct you to one point we discussed with your friend on the other side, which is on joint infringement. What's your view of how things went down with regard to the district court suggesting that they've given it up as opposed to whether or not they actually preserved it? Your Honor, I apologize. I didn't hear you. Okay. I'm sorry. This is on the point of joint infringement that we were discussing with your colleague. Yes. What is your view of how things went down in terms of whether they appropriately preserved the issue or whether the district court really said no, you haven't preserved it, it's gone? Your Honor, my issue is very simply this. The judge said at one point you have not raised joint infringement. Joint infringement is not in the case, and he said sit down, as Mr. Robertson correctly said. I think he said get back in your foxhole is what he said. Pardon? I said I think he said get back in your foxhole is what he said. Oh, okay. He may have said that. You read it more closely than I. But beyond that, there was a charge conference. At the charge conference, the judge expressly gave a, not a joint infringement, it said it had to be a sole actor, a sole actor. He asked for objections. Mr. Robertson agreed. He did not object. Thereafter, later on, he said, both before and after he charged the jury, he said are there any objections? And he said, I acknowledge you preserved any objections made at the charge conference. He expressly said at the charge conference. Mr. Robertson omitted that from his comment. He didn't make any objections at the charge conference. I say this is a clear waiver of any joint infringement argument. That's my answer to you. Okay. Thank you, Mr. Miller. Thank you, Your Honor. Mr. Spratt, you have one minute. Two points on the ruling on Dr. Mangum. First, it was not a doubling of the rate that Dr. Mangum did after analyzing the Georgia-Pacific factors. He considered that the most probative evidence of a royalty rate was the Ariba agreement, which he calculated had a 3.8 percent rate, not including the value of the cross-licensed Ariba patents. He considered all the factors. He determined that an appropriate rate would be in the range of 5 percent to 6 percent. Second, all of the criticisms that Dr. Mangum, that the court issued with respect to Dr. Mangum, including, for example, the charge that Dr. Mangum, quote, utterly ignored three litigation settlements. That's a 32081. Those go to the weight, not the admissibility. And, in fact, Dr. Mangum had carefully considered each of the three agreements and he explained that there was insufficient revenue information in the record to calculate a royalty rate for those three agreements. That was the reason he didn't use them, not because they were lower lump sum figures. Thank you, Mr. Spratt. Before we submit the case, I have one question about counsel, and that is we have this ruling by the PDO as to patent validity. An appeal to our court has been filed with respect to that. Is there any agreement by the parties about expediting the appeal from the PDO decision? Your Honor, I didn't hear your whole question. Is there any— We have a decision by the PDO as to patent and validity. There's been an appeal to our court from that decision, as I understand it. Is there any agreement between the parties about expediting that appeal? Your Honor, there is no agreement. We'd be delighted to have it expedited. I would note that we were not the petitioner in that case. It was the SAP, and therefore we were not a party to that reexamination, even though, as we submitted in our 20HA paper, an affirmance of that decision would have collateral estoppel effect in this case. So we would be delighted if that case were expedited. I think this is really a question for Mr. Robertson or Mr. Sam. Yes, sir. I don't think that—I mean, this would be a case of a matter between the PDO and A+. And so I can address that. I mean, I don't think that it would be appropriate, quite frankly, because it would not resolve this case. There are still other patent claims that are implicated that are not in that case, and we think— Well, yes, the systems claims are not in there. It's the method claims, right? That's correct. And in addition, there are other appeals in the pipeline with respect to certain claims that are still ongoing with the PTO, and we'd like to resolve those. I also think, without trying to get into the merits of it, we think we have very strong arguments on reversal on that, and I think we would not like to hold this case up in that sense because we do have proceedings that are still going on back at the district court that we are going to be resuming fairly shortly, I would expect. Okay. Thank you. Thank both counsel and the case is submitted.